Good morning, your honors. My name is William Broberg. I represent Martin Medina. And for Mr. Medina, I want to thank you very much for hearing me on his behalf this morning. We're only here to serve. Apparently. This is a case about the Speedy Trial Act, and in particular, one ruling from the district judge excluding various periods of time. In fact, it really comes down to two periods of time that I'm going to talk about. One period of time relates to the judge excluding time by saying that motions of a, at the time, co-defendant, and it's important to realize what those motions were. One was a motion to sever as well as a motion to suppress that were filed on March 31st, 2004. And no action was taken on these motions until they were finally mooted after that co-defendant had pled guilty on September 14th, 2004. The reasoning of the district judge was that 3161H1F in the Supreme Court's Henderson case required exclusion of all of that time. It's an unusual situation, though, because nothing, no action was taken at all. Not had a hearing and then taken under advisement. Just nothing. Which makes this case very different. Now, Henderson says it doesn't matter even if the delay is unreasonable, even if it's unnecessary, all of that time is excluded. And we have a case, Gorman, which suggests that even if the motion ultimately is not ruled on for some reason, that doesn't mean you include the time. So why isn't all that time excludable under the Henderson rule or interpretation of that section? Well, the Henderson rule talks about motions that require a hearing and motions that don't require a hearing. And what is interesting is where do we look to decide whether it requires a hearing or not. I would submit that we should look to the district court's own rules. And in the Western District of Washington, a motion requires a hearing only if the court says it requires a hearing. There's a default that in the local rules that all motions will be decided on the papers unless the court orders argument. Now, I saw that in oral argument. But the local rules seem to distinguish between oral argument and evidentiary hearings and seem to have a different rule for evidentiary hearings. Is that not correct? It talks about number 10, evidentiary hearings and oral arguments, and it has a statement about deciding without oral argument, but then it goes on to talk about if the court or grants a request for oral argument, it's making that distinction. The clerk will notify the parties. It doesn't seem to have that same general rule. Kathy, the time's not running. I trust I'm not going to use all that time anyway. So I agree there's a distinction, Your Honor, but it seems to me to be a distinction without a difference because you really don't get oral argument unless they grant the request for it or get an evidentiary hearing unless that is ordered too. So when would the district court be obligated to make that determination that it required a hearing? Under the rule that I would propose? Yes. I would say that some prompt action needs to be taken. Why? If the rule is, as Judge Acuda said, which I believe it is, that if it requires a hearing, then even if there's an inordinate delay, then it doesn't make any difference. But you're saying because of the local rule, it imposes an affirmative obligation on the district court. It seems to me there's certainly certain types of motions that almost inherently would look toward a hearing. And a motion to suppress would seem to fall into that category because there are going to be factual disputes and at least it's susceptible to a hearing. If it's something that is so obviously just a question of law and it may be decided on the papers, that might be a different case. But one of the motions here was, in fact, was it not a motion to suppress? It certainly was, Your Honor. And the other one is important too, though. It's a motion to sever. Yes. Because why should Mr. Medina have to, you know, deal with this delay from this co-defendant's thing if he was wrongly joined? And the co-defendant is saying. Was Medina's motion to sever was also pending? No, no, no. The co-defendant had a motion. And actually there is some authority in this Court's Daychild case. It discusses that you impute the time from the co-defendant because no motion to sever had been filed. Well, I just didn't follow the logic. Maybe I'm just not understanding your logic that if the co-defendant files a motion to sever and Medina doesn't, you just said why should he be, why should Medina be prejudiced by this delay of somebody he's not supposed to be joined with if he's improperly joined? Medina wasn't arguing. He was improperly joined. It was the co-defendant. No, he wasn't. But my point being is if he had filed and joined in the motion for severance, then you might say I've really been, you know, I should have been joined in the first place and now I'm being, you know, prejudiced by the fact that my motion didn't get heard on a timely basis. I'll have to think about the logic of that. What seems to me to have happened here is this was a continuance sub silencio until trial of these motions. It looks like it was, at least in this part, it looks like there was something going on to work out a deal. And so that's why it wasn't brought on. I have no idea why the district court, how the district court manages its calendar. But I'd hate to start imputing bad faith on the part of the district court. Fair enough. That's why I'm suggesting, Your Honor, that this, it seems to me that if it became clear to the district court that they were going to have a trial, then it would have helped, you know, certainly dealt with the suppression issue. So what seems to have happened is that this is a continuance to the trial of the motion, which makes the case then very much like the Clymer case, where the ---- Well, in Clymer, didn't they postpone the hearing on the motion until after the trial? I mean, these are the sorts of motions that would have to be taken care of before a trial. Well, in Clymer, if I remember correctly, it was a motion to dismiss for outrageous governmental conduct. And I believe it was adjourned until the trial, then wasn't acted on until after the trial. I mean, it didn't seem that this was either a trailing motion. I mean, it obviously has to be addressed before a trial. It's a motion to suppress, motion to sever. And it wasn't apparent that it was a pro forma discovery motion like in Sutter. So it just seems like a, you know, the sort of motion that Henderson says you can let continue unreasonably, even if it's not a necessary motion, I think, as in Morales. It seems like in every other case, the Henderson case itself, Clymer, the district court has taken some action. Even in the Clymer case, the district court is like, I'm continuing this until trial. Here, this is just in space. It just exists. And certainly the decision about whether, you know, this other defendant is wrongly joined certainly has implications for all of them, for reasons of the Speedy Trial Act and other, in other cases. And what I found in my survey of this Court's cases is I couldn't find a case where a motion just sat out there for that long without some kind of action, without it being continued over and over again. Or, you know, for instance, in the Henderson case, there's a very long time after the hearing. But what I don't think the cases address is where just nothing happens. So you're seeking, in essence, a new, a decision that would be a new rule issue of first impression, saying that where a motion is brought and the court doesn't take action on it, that time is not excludable under the Speedy Trial Act? I'm saying that there is a, there should be a limit where there's, you know, the Henderson case talks about in 3161, let me get my number right, H1F, talks about the period of time from the motion being filed through the hearing and through decision. Here, because there was no hearing, I'm saying that the maximum that should be excluded here is the 30 days. Because it's like, it becomes then, when there's no action on it, it becomes like a motion that doesn't require a hearing. If the district court, it creates an incentive for the district court to take action sooner, is what the rule I propose is. And that actually causes the act and its purposes to be, to be put into action. Now, what if the district court explicitly, when it's entering the, or declaring the motion to suppress and the motion to sever moot, says at that time, this was a motion that I felt required a hearing. And doesn't say anything more than that. And therefore, avoids the 30 day limit default rule that you're suggesting. In other words, enters the finding after all the time has gone by, even though there was no hearing, the judge last night had said, I thought this was going to Would that be then sufficient to avoid your default rule? I believe that the judge could do that. I believe that under the Zedner case, there is some discussion about doing some stuff post hoc. However, in the Zedner case, it's talking about whether you could then post hoc something from a hearing on a motion to dismiss. The problem is here is, is Judge Lasnik didn't say that. He just said they were moot. And in this period of time, it is extraordinary, with no action being taken. And actually, the judge is even reminded by co-defendant's counsel at one place in early August, you know, the co-defendant renotes the motion. And still, nothing is taken. And it seems like if we continence a situation where cases can just, you know, you can bring motions and no action whatsoever is taken upon them. You know, for instance, if this went by for six months, and then the judge ordered a hearing, and then took another six months to decide the case, I think because there was a hearing, you would come in the operation of the Henderson case and 3161H1F. And notwithstanding the fact that that one motion took a year between time of filing and decision, that that period of time would certainly be excluded. Here, because the judge didn't get around to it until the case was moot, I don't believe that it comes in that exclusion. Now, are you familiar with the Gorman, our case in U.S. v. Gorman? In that case, there was, we held that the district court properly excluded, I think it was a 10-month period between a motion to exclude evidence, and then the court then accepted the plea of the defendant. So there was no ruling on that motion. How do you distinguish the Gorman situation from this one? Well, isn't in, if I remember correctly, isn't in the Gorman case, there's no ruling, but there has been a hearing? Am I remembering, misremembering this? There was a motion, and then it was just pending for that period. No additional matter. I'm sorry. I'm going to have to check when I sit down the actual case. It's not firing. Pardon me. Our alternative basis to argue that the calculation is wrong here is an end of justice continuance that the district court granted on the 17th of October, or excuse me, the The problem with this continuance is this is a continuance where you read it, it's a stipulation, and it also comes with an order, a subjoined order, where essentially this entire thing is about we need more time to do plea negotiations. And the infirmity, it essentially repeats the infirmity from the first three orders that the judge and the government at this point in their brief has agreed that the court below found four of the five ends of justice continuances to be wanting. This is the one that it said was not wanting, which it issued, I believe, 19 days before Mr. Medina's then counsel had another trial scheduled. And essentially it's some stipulate. That would give two reasons, one to do plea negotiations and the other to prepare. It said that in order to, if our plea negotiations don't work, then we'll need to prepare. Does that answer your question, Your Honor? I mean, that is, I believe, the way it was styled. In that case, the problem with this is, is there are some reasons floating around, but there's no explicit finding, none. It's essentially the judge just saying it is so ordered, whatever you say. And the problem here is, is the parties in their motion in order don't even, stipulation in order, pardon me, don't even say, you know, we stipulate that the ends of justice, the ends of, you know, the language from the statute itself. And I'm not saying the judge has to get it perfect, but there's nothing even suggesting that that is the standard or the finding being made at that place. And therefore, I think that's a pure, straight-up question of law. I think you all look at this, which is in the second volume of excerpts of record 190 through 193. So the counsel gave three grounds, and I'm just looking at my notes here, that the government had provided the defense counsel audio recordings of conversations between Medina and an undercover police officer that they hadn't received before, that they wanted more time to conduct plea negotiations, and that the defense counsel was about to begin another unrelated trial. And so the court signed the stipulation. And assuming we conclude that signing the stipulation was similar to or was equivalent to making those findings, as we do in other cases where counsel prepare orders, aren't the needing more time to review the audio tapes and making the defense counsel available when the defense counsel has the time conflict? Doesn't that fall into the effective preparation prong for the ends of justice? I certainly think it could, if the finding was explicitly made. But Your Honor gave two reasons, and the second one is – pardon me – the second one – the audio tape issue, there were 19 days between the time that this Mr. Medina's then-counsel, Alison Holcomb, had to start her next trial. And the problem is, is when you've got a case that's gone on that long at that time, you know, having, saying, you know, getting discovery at that point, there's no incentive if we're just granting these things. There's no incentive. There's no reasoning here about, you know, why this discovery wasn't there. And it creates this kind of perverse – I mean, if we're approving those things at that point, then we're not affecting the act. The stipulation, as I recall it, did not have an explicit purpose. It was an express statement that the ends of justice or the justifications outweigh the speedy trial interests of the defendant or the public. Absolutely. In other words – Is there any precedent about whether making, like, a finding on that balance is essential? Yes. It's the Zedner case. It's the Zedner case where Justice Alito said that a tossing reference to the complexity of the case isn't enough. It's got to be an on-the-record finding. And indeed, the statute itself talks about that this time is included unless the district court finds this. I mean, it's mandatory language. And it is – you know, it's just – it is technical. But as Justice Alito talks about, the Speedy Trial Act is you can have lots of reasons, substantive open-endedness, but procedural strictness, that's the scheme. Okay. So if that time should have been excluded, instead of being 21 days over, I guess 22 days if you count the day error on March 30 to 31, how many more days over is it? It would be 85 more days. And 85 – it would then be 85 added to the 91, which you would get into a delay that would be about, if I'm doing my math right, about 35, 36 days more than the 135-day delay in the Clymer case. Your Honor, I'm running out of time. You can reserve the balance. Good morning, Your Honors. I was before this Court on Monday, and I hope I haven't worn out my welcome. No, you haven't. No, you haven't worn out your welcome. And I was hoping you would address the same issue in part that I asked Mr. Bromberg about. I'm eager to. That is, like, it did trouble me that the adoption of the – of the statute stipulation did not seem to include in it the balancing – the language about the balance of interest that I thought the statute required. And so do we have precedent on that? Do other circuits have extra circuit precedent on that precise issue? Yes, Your Honor. And in fact, Mr. Bromberg's answer was partially complete in that the Court does require – the Supreme Court in Zedner requires that the Court make findings that – that under section 3161H, that those findings be on the record. However, in Zedner, in the same sentence, the Court goes on to say those findings must be on the record by the time the district court rules on the motion to dismiss. And that is exactly what Chief Judge Lasnik did in his 10-page written ruling regarding the defendant's motion to dismiss. The standard of error here, Your Honor, is clear error. And under that – under that review and the Chief Judge Lasnik's finding of a 21-day violation, that the finding that the dismissal was mandatory as well as finding that the indictment should be dismissed without prejudice was appropriate in this instance. His ruling is complete, and he actually goes to such lengths as to separate the 402 days at question here into four separate categories, and then he analyzes each of those categories for the days that should be included as well as the days that are excluded. If you compare that to Ayano Ochoa, a Ninth Circuit case, in that case, the Court held that the district court's terse explanation that the violation was not egregious enough to justify dismissal with prejudice was sufficient. Here, Chief Judge Lasnik went to much greater lengths to find the – to find and to place on the record his findings that dismissal without prejudice was appropriate. And I first want to turn to the issue about pretrial motions. It must be easy to look back and, in hindsight, decide whether the court was lax or whether the parties were lax in bringing motions to suppress quickly for a hearing. But in fact, the parties were busy. This was a five-defendant case. There were defendants who were agreeing to cooperate. There was proffers going on. There was discovery being produced and being produced as it became available. These two motions in particular, the motion to suppress for custodial statements and the motion to suppress cell phone evidence, required an oral argument. Here, the co-defendant in this case filed a motion to recalendar those motions, the oral argument, which just shows that the parties were active and busy. This was not a case that was languishing. To follow Mr. Broberg's decision would require this Court to simply ignore U.S. v. Henderson, U.S. v. Gorman, and also U.S. v. Vaux. There, the Ninth Circuit found that, quote, no matter how unreasonable or unnecessarily – unnecessary the delay might be, end quote, that time is excludable. And we should not question that rule because it is well-founded by Supreme Court and the Ninth Circuit. So just so I understand, that was in reference to the motion to sever? The motion to suppress custodial statements. And suppress. So your response is that there was activity going on during that period of time? That's absolutely correct, Your Honor. I pointed out that those two evidentiary matters would have required the government to put on its witnesses as to whether Miranda warnings were properly given to the defendants, and there's no way that those two cases, those two motions could have been resolved absent a hearing. Now, is there any evidence whether the Court was aware that there was some deal in the offing with respect to Contreras? I'm sorry, Your Honor. Was there – I'm sorry. Was there anything in the record to indicate that Judge Lasnik was delaying doing anything on the motion to suppress because he understood there was a potential deal that would moot those motions? The only evidence that the judge may have considered about that on the record is, are the continuances that were also filed during that same period that talked about discovery, that talked about plea negotiations, that talked about the actions of counsel. Okay. As to the issues regarding the continuances, the judge was correct in his analysis that at least two of these continuances were – did not meet the stringent requirements, and he threw those out, and he added those days to the speedy trial clock. As far as Mrs. – as far as Mr. Medina's counsel's motion on October, which is at issue today, the judge found that the attorney's unavailability was a grounds for a continuance, and he made that record very clear. The continuity finding. The continuity finding? Exactly, Your Honor. The statute requires that if there is a violation, that dismissal is mandatory. However, that same statute gives the judge the discretion to decide whether it's with or without prejudice and asks that three factors be considered. The first factor is the seriousness of the offense. Here Mr. Medina was charged with a – with offenses that provided for life in prison and, at a minimum, a 10-year mandatory sentence. There's no challenge that Mr. Medina faced a serious offense. The facts and the circumstances of the case which led to dismissal is the second factor, and I'd like to point out that in this case, Mr. Medina's attorney agreed and stipulated to every continuance in this case. Mr. Medina's attorney entered into the October and December 2004 continuances after seeking approval from – from Mr. Medina. Mr. Medina never alerted the Court or anyone else, for that matter, that he objected to the continuances or that he wanted to proceed to trial. His attorney was unavailable for trial due to either preparation for another matter or attending to that other matter through October – through December of 2004. While Mr. Medina was detained pending this case, he assaulted a government witness, a cooperating defendant. When those – when those allegations were brought to his attention and his attorney's attention, that required time for him to consider that problem and to consult with his attorney. Mr. Medina's decision to, on two separate occasions, to enter into a plea of guilty and then to withdraw from that decision in court certainly delayed this case. Mr. Medina voiced no displeasure about his attorney until February 15th, 2005. Of course, I noticed that Judge Lasnik was a bit upset that there weren't any stipulations and one of the reasons he was upset is he'd like to have comfort that the defendant himself knew what was going on. In fact, he issued a prospective order saying no more continuances without the waiver being filed as ordered. That's absolutely correct. So we know that Medina – Mr. Medina, is it different from counsel, was aware of all of this? We know that Ms. Holcomb, his former counsel, took the stand and testified and that her testimony was that in every instance he approved those continuances, particularly the last two continuances where only he was the defendant remaining, and that testimony  What concerns me about the allegation made on page 13 of the defendant's appeal is that there's a statement that the reason for the February 15th, 2005 hearing was because Mr. Medina was dissatisfied that his case was not going to or was not proceeding to trial. In fact, on that date, he had a change of plea hearing. That's why the parties were in court and when he arrived at court, he changed his mind. We then proceeded to – to the – to Mr. – to Judge Lastnick's courtroom, but there's simply nothing in the record that supports Mr. Medina's contention in that – in his appeal regarding his intent that he wanted to proceed to trial. In fact, on February 15th, Judge Lastnick allowed Ms. Holcomb to withdraw and it was only at that time that the government requested that the court make – should perhaps consider whether Mr. Medina should sign a waiver of speedy trial. Prior to that time, Mr. Medina made no such comment and in fact, the record is clear that Mr. Medina never communicated his speedy trial concerns until March 9th, 2005. I think we have the record. I'm not sure you need to go through step by step. Thank you, Your Honor. In short, as to the third factor, whether there was prejudice to the defendant, in fact, the length of delay was short, his defense was not impaired. It did not keep him from pleading guilty if he desired. It certainly gave him an opportunity for a settlement conference. It gave him an opportunity for another change of plea hearing. It gave him time to even ask for new counsel. There was no pattern of neglect on the government's part, nor did Judge Lastnick find that the government acted in bad faith. In short, the defendant doesn't get it both ways. He and his attorney, their actions resulted in some of these delays and he doesn't get to turn around now and use these delays as a strategy to terminate his prosecution. Thank you, Your Honor. Thank you. I'm going to apologize, Judge Akuta. I do not have the Gorman case with me. I am going to go immediately read it and, if appropriate, we'll file something under 28J. I'm very, very sorry. It's all right. We're familiar with the case. We'll factor it in. Okay. Thank you, Your Honor. All right. I just wanted to respond to one point that the government made, and the government was talking about how in Zedner that Zedner kind of seems to extend the temporal period when one can do the required balancing from the statute. I agree with that. That's true. It certainly seems to be what Justice Alito is saying. The problem is, is the government then tells you that he did it in this ten-page order. At the second volume of excerpts of record at page 232, from lines 2 to 19 is what Judge Lasnik says about this particular continuance. This is order? Yes. This is in his order. I don't have the EER pages. I just have his pages. What page are you on? Page 6 of his order, Your Honor, from lines 2 to 19. There's no balancing there either. There's none. It's just conclusory saying, hey, that's it. No, I don't think that's true at all. You don't? What do you think? It says, furthermore, an ends of justice continuance may be granted to ensure continuity of counsel. I mean, he's going through, weighing all of these. He's clearly making the appropriate inquiry under an ends of justice analysis. He's gone through it. He's been pretty selective through here. He grants some, denies some. Well, I think that he says that, you know, an ends of justice continuance may be granted to ensure counsel and then cites that Nance case. Yeah. But the problem is, is there still is not the balancing. Well. It's not weighing the public's interest. It's not in speedy trials. The defendants, the courts, that's not happening. It's just like this could qualify. And I would agree, that could qualify. But we here have a 19-day period of time. Does she need all 19 days to prepare for her next trial? I mean, that's the kind of oversight that we want a district court to do. Counsel, I have to say, I would have trouble faulting Judge Lasnik's careful analysis in this case under those terms. Maybe he could have been more precise, and maybe you would like to see more balancing. But one reads that order and gets the impression of a judge who's fairly carefully, quite carefully going through the arguments and making a merits-based decision. If he hadn't referred to ends of justice or whatever, then Zedner might be more appropriate. That's my reaction. No, no. I think it's careful. It is ten pages. His order. The problem is, is that there are some delays that are fairly attributable to the court. All right. And I'm sure you will weigh that. Thank you very much for hearing me today. All right, counsel. Thank you both. All right. This case is submitted.
judges: Fisher, Gould, Ikuta